COMMONWEALTH of Pennsylvania, Appellee,

v.

Freelin W. WRIGHT, Appellant.

Superior Court of Pennsylvania.

Submitted May 19, 2003.
Filed Sept. 12, 2003.

Mark D. Stevens, Meadville, for appellant.

Francis J. Schultz, Asst. Dist. Atty., Meadville, for Com., appellee.

Before: DEL SOLE, P.J., GRACI and BECK, JJ.

BECK, J.

¶ 1 Appellant Freelin W. Wright was convicted by a jury of aggravated assault,[1] recklessly endangering another person,[2] carrying a firearm without a license,[3] possessing an instrument of crime,[4] and public drunkenness[5] in November of 2000. The trial court imposed a sentence of seven to fifteen years and later denied appellant's post sentence motions in which he sought a new trial based on after-discovered evidence, as well as a reduction in sentence. Appellant did not file a direct appeal.

¶ 2 In February of 2002 appellant filed a timely petition under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9542–46 (PCRA). In it he alleged that prior counsel was ineffective for failing to file a direct appeal. He also raised other instances of alleged ineffectiveness, including counsel's failure to move for suppression of certain evidence. The PCRA court granted relief in the form of an appeal *nunc pro tunc.* In this, his subsequent appeal, Wright challenges his sentence, raises claims regarding the sufficiency and weight of the evidence, states that the trial court erred in ruling against his motion for a new trial,

---

1. 18 Pa.C.S.A. § 2702(a)(1).

2. 18 Pa.C.S.A. § 2705.

3. 18 Pa.C.S.A. § 6106(a).

4. 18 Pa.C.S.A. § 907(b).

5. 18 Pa.C.S.A. § 5505.

and renews his claims of ineffectiveness. We affirm.

¶ 3 On the night of June 18, 2000, appellant, while drunk, went to the house of his former girlfriend, Brenda Sue Barker, who was watching television with her current boyfriend, Bernard Custard. Her son, Nathan Barker, was asleep on the couch. Appellant rang the buzzer and Custard went down to see what was going on. According to Custard, he opened the door quickly, causing appellant to fall off the porch onto the cement. As Custard was ringing the neighbor's buzzer so that he could use the neighbor's phone, appellant sat up and pulled out a gun. Custard felt a blow to the back of his neck, where appellant had shot him. Brenda Sue Barker and Nathan Barker were witnesses to the shooting.

¶ 4 Police arrested appellant shortly thereafter, and appellant gave a statement that was tape recorded and played at trial. In the statement, appellant claimed that the shooting was accidental.

¶ 5 Appellant's first issue on appeal is that the trial court abused its discretion in imposing sentence. He urges us to find that the trial court erred in denying his motion to reconsider his sentence. Appellant is not entitled to automatic review of the discretionary aspects of his sentence; rather, he must satisfy procedural requirements by setting forth a brief statement of the reasons relied on for allowance of appeal. Pa.R.A.P. 2119(f); *Commonwealth v. Koren*, 435 Pa.Super. 499, 646 A.2d 1205, 1207 (1994). In addition, he must show that there is a substantial question that his sentence is not appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 653 A.2d 706, 710 (1995).

¶ 6 Appellant argues that his sentence was "especially long for the single act in question, the actual injuries suffered by the victim, and the victim's statement at the time of sentence." Appellant's Brief at 12. He concedes that he was subject to a mandatory five year sentence under the law and that the trial court "gave standard range sentences," but he claims that "the facts of this case seem to call for concurrent sentences which was argued by trial counsel but dismissed by the court." Appellant's Brief at 13.

■ ¶ 7 In *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002), our Supreme Court held that a claim of excessiveness *may* raise a substantial question where an appellant provides a plausible argument that the sentence is contrary to the Sentencing Code or the fundamental norms underlying the sentencing process. Appellant's claim here, that consecutive sentences are too harsh, is little more than a bald claim of excessiveness. Appellant simply has not raised a substantial question and so is not entitled to review.

■ ¶ 8 Further, even if we were to conclude that his claim does raise a substantial question, we would find no reason to vacate sentence under these facts. Sentencing is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *Commonwealth v. Rickabaugh*, 706 A.2d 826 (Pa.Super.1997). In imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed. *Id.* The record in this case adequately supports the trial court's decision.

¶ 9 We next address appellant's claim that the trial court erred in rejecting his request for a new trial based on after-discovered evidence. At a post sentence hearing on appellant's unsuccessful request for a new trial, he offered as a witness Justin Rivers, who testified that

Custard admitted to him that he (Custard) pushed appellant on the night in question, thereby instigating the physical confrontation that resulted in the shooting.[6] At trial, Custard denied striking or pushing appellant.

■ ¶ 10 The grant of a new trial on the basis of after-discovered evidence is proper when the following conditions are met:

1. the evidence has been discovered after trial and could not have been obtained prior to the conclusion of trial by the exercise of due diligence;

2. the evidence is not merely corroborative or cumulative;

3. the evidence will not be used solely for impeachment purposes; and

4. the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Cobbs*, 759 A.2d 932, 934 (Pa.Super.2000) (relying on *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978)).

■ ¶ 11 The evidence offered by Rivers would be useful only as impeachment evidence and, on that basis, does not constitute after discovered evidence warranting the grant of a new trial. *Id.* In addition, we agree with the trial court that the evidence was not of such a character that its admission would have prompted a different verdict. Appellant's statement varied little from Custard's version of events as to how the shooting occurred. Specifically, at the time appellant drew his gun he was on the ground and Custard, who was unarmed, was on the porch. Custard

was shot in the back of the neck. According to appellant's statement, the gun simply "went off"; he did not aim at Custard and was not acting in self-defense. In light of the entire record and the standard for after discovered evidence, we conclude that the trial court did not err in rejecting appellant's request for a new trial.[7]

¶ 12 Appellant also claims that trial counsel was ineffective for failing to move to suppress appellant's statement to police prior to trial. Although this issue was fully litigated at the PCRA hearing, the PCRA court did not rule on the issue, instead granting appellant his request for an appeal *nunc pro tunc*. In declining to resolve the suppression issue, the trial court relied on a body of case law directing that "once the PCRA court finds that the petitioner's appellate rights have been abridged, it should grant leave to file a direct appeal and end its inquiry there." *Commonwealth v. Pate*, 421 Pa.Super. 122, 617 A.2d 754, 757–58 (1992). The logic underlying the rule in *Pate* is that "a defendant [who] establishes that counsel's ineffective assistance denied him entirely his right to a direct appeal … is entitled to a direct appeal *nunc pro tunc* without regard to his ability to establish merit of the issues which he seeks to raise on direct appeal." *Commonwealth v. Franklin*, 823 A.2d 906, 909 (Pa.Super.2003) (citation omitted). The PCRA court's role under these circumstances does not include reviewing any of the defendant's claims for legal sufficiency; rather it is, "limited to fact-finding, which becomes particularly valuable to our eventual review of an appellant's claims." *Id.* at 910–11. Unlike the *Pate* line of cases, however, here the

---

6. Appellant's counsel also wished to call two other witnesses for the same purpose but had not issued subpoenas for them.

7. Custard's alleged statement to Rivers would not have been admissible as substantive evidence either as the statement fits none of the criteria for reliability set out in *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992), which governs the use of prior inconsistent statements as substantive evidence.

evidence presented at the PCRA hearing was not limited to whether appellant was denied his right of appeal; it also included complete testimony on the suppression issue.

¶ 13 Recently, in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court directed that ineffectiveness claims should await collateral review rather then be addressed on direct appeal. One of the primary reasons underlying *Grant* is that on direct appeal the record from the trial court typically is insufficient for appellate resolution of an ineffectiveness claim. "Ineffectiveness claims [often] are based on omissions, which, by their very nature, do not appear of record and thus, require further fact-finding, extra-record investigation, and where necessary, an evidentiary hearing." *Id.* at 64, 813 A.2d at 736. In keeping with *Grant*, we regularly dismiss claims of ineffectiveness raised for the first time on direct appeal without prejudice to the appellant's right to raise the same claim in a subsequent PCRA petition. *Commonwealth v. Rosendary*, 818 A.2d 526 (Pa.Super.2003).

¶ 14 Here however, there is an adequate record upon which we can assess this ineffectiveness claim because there was a full evidentiary hearing on the issue at which trial counsel appeared and testified. Further, dismissal of this claim pursuant to *Grant* would be judicially inefficient as a subsequent claim on collateral review would merely prompt a hearing identical to the one that already occurred below.

¶ 15 In his concurring and dissenting statement, Judge Graci agrees that coun-

sel testified to his strategy on the record and that the strategy chosen appears reasonable. However, Judge Graci believes that *Grant* does not allow "consideration of ineffectiveness claims where we, as an appellate court, believe there is an adequate record upon which we can assess an ineffectiveness claim." We note first that the *Grant* case addressed ineffectiveness claims raised for the very first time on direct appeal. This is simply not the case here.[8]

¶ 16 Further, in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), the Pennsylvania Supreme Court recognized certain exceptions to *Grant's* general rule and created an additional exception. The *Bomar* Court held that in those cases where an ineffectiveness claim has been fully developed in the trial court, the *Grant* rule of deferral is not applicable. *Id.* at ——, 826 A.2d at 853. We recognize that this case differs from *Bomar* because in that case, the trial court not only held an evidentiary hearing on the issues of ineffectiveness, but also ruled upon those issues. However, the only question with which we are confronted here is whether counsel had a strategic basis for his actions and whether that strategy was reasonable. The certified record provides a clear answer to both questions, making dismissal of the ineffectiveness claim under *Grant* unnecessary.

¶ 17 As in *Bomar*, the certified record in this case insures that "there is no danger of engaging in appellate fact finding in the form of speculation concerning the strategy actually pursued by trial counsel." *Id.* at ——, 826 A.2d at 854. Rather, the

---

8. *Grant* was decided several months after the PCRA evidentiary hearing in this case and applies only to cases "currently on direct appeal where issues of ineffectiveness have been properly raised and preserved." *Grant*, 572 Pa. at 69, 813 A.2d at 739. Appellant's posi-

tion is a hybrid of sorts. His request for PCRA relief included a request for an appeal *nunc pro tunc*, which was granted. As a result, he returned to direct appeal status with an underlying ineffectiveness claim that had been fully litigated below.

record provides us with an opportunity to "review trial counsel's strategy from the 'horse's mouth.'" *Id.*

¶ 18 We believe that the rationale in *Bomar* permits our assessment of appellant's ineffectiveness claim. Thus, we proceed to consider and resolve the claim on the record before us.

¶ 19 At the evidentiary hearing, counsel testified to his motives in not moving for suppression. He stated that he viewed the admission of appellant's statement as an advantage. Counsel explained that in the statement, appellant described the shooting as an accident. Admission of the statement meant that the jury could hear appellant's explanation for his conduct without appellant having to testify and be subject to cross-examination on his prior *crimen falsi* convictions. Plainly, counsel's strategy was a reasonable one. We cannot find ineffectiveness under these facts. Appellant is not entitled to appellate relief on this claim.

¶ 20 Appellant also claims that the evidence at trial was insufficient to support the verdict. Under Pa.R.Crim.P. 606(A)(7), a defendant is entitled to raise the issue of sufficiency for the first time on appeal. When considering whether the evidence proffered at a criminal trial was sufficient to support the guilty verdict, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth to determine whether every element of the crime has been established beyond a reasonable doubt. *Commonwealth v. Gillen*, 798 A.2d 225, 230 (Pa.Super.2002).

¶ 21 The evidence in this case plainly satisfies the standard for sufficiency. In addition to Custard, appellant's former girlfriend and her son witnessed the shooting and testified about what they observed. Appellant is not entitled to relief on sufficiency grounds.

¶ 22 Appellant's final claim is that the verdict was against the weight of the evidence. Unlike the suppression issue for which we had an adequate record, appellant's weight claim is not capable of review because counsel did not raise the issue at the evidentiary hearing and the PCRA court did not address the issue. Appellate consideration of a weight of the evidence claim is limited solely to review of the trial court's determination on the issue. Pa.R.Crim.P. 607. In the absence of an assessment of weight by the trial court, we have nothing to review on appeal. *Commonwealth v. Washington*, 825 A.2d 1264 (Pa.Super.2003).

¶ 23 Judgment of sentence affirmed.

¶ 24 GRACI, J. files a Concurring and Dissenting Statement.

GRACI, J., Concurring and Dissenting.

¶ 1 I am always reluctant to disagree with my learned colleagues and hasten to join them when I am able to do so. Here, I fully agree with the majority's disposition of Appellant's sentencing claim, his after-discovered evidence claim, his sufficiency of the evidence claim, and his weight of the evidence claim and join the opinion which rejects all of them.

¶ 2 My view of the Supreme Court's decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), is different from that of the majority, however. Therefore, I dissent from that portion of the opinion and would, instead, dismiss Appellant's ineffective assistance of counsel claim regarding suppression of his statement without prejudice to his right to seek relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541 *et seq.*

¶ 3 I recognize, of course, that a hearing was conducted on this claim. The trial

court, however, did not resolve it. In reaching its decision in *Grant* which rejected twenty-five years of precedent which required appellate courts to address ineffective assistance of counsel claims that were raised for the first time on direct appeal, the Supreme Court observed that by allowing claims of ineffectiveness to be raised and resolved for the first time on direct appeal "the trial court is eliminated from the process." *Id.,* 572 Pa. at 64–65, 813 A.2d at 736. The Supreme Court said it is the trial court "that had the opportunity to observe counsel's performance firsthand and is therefore in the best position to make findings related to both the quality of trial counsel's performance and the impact of any shortfalls in that representation." *Id.* (citation omitted).

¶ 4 Even though I might agree that, on the record, it appears that counsel had a reasonable strategy in not challenging Appellant's post-arrest statement and, therefore, was not ineffective, I believe that *Grant* dictates that we not address this claim. *See Commonwealth v. Carmichael,* 818 A.2d 508, 510 (Pa.Super.2003) (Bowes, J., concurring). Different from the majority, I am aware of no exception to the general *Grant* rule which allows consideration of ineffective assistance claims where we, as an appellate court, believe that there is an adequate record upon which we can assess an ineffectiveness claim. *See Commonwealth v. Rosendary,* 818 A.2d 526, 531–32 (Pa.Super.2003) (Graci, J., concurring). In my view, *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), relied on by the majority, does not provide such an exception. As the Court explained in *Bomar:*

> This appeal ... involves a circumstance not present in, or addressed by, *Grant:* appellant's claims of ineffective assistance of counsel were properly raised

and preserved in the trial court. Following sentencing, trial counsel withdrew from the case and present counsel entered the matter and filed post-sentence motions on appellant's behalf, raising, *inter alia,* the same claims of trial counsel ineffectiveness now raised in this Court. The trial court conducted hearings on the post-sentence motions on March 4 and April 20, 1999, at which appellant's trial counsel testified. *Moreover, the trial court addressed the ineffectiveness claims in its opinion. See* Trial Court slip op. at 48–59.

*Id.,* at ——, 826 A.2d at 853 (emphasis added). The fact that the trial court resolved the ineffectiveness issues was obviously important to the Supreme Court in adopting this first exception to the general rule in Grant. The Court observed:

> [T]here is a trial court opinion addressing the ineffectiveness claims raised on appeal. We observed in *Grant* that "the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance." [572 Pa. at 66] 813 A.2d at 737. In contrast to the more common situation where ineffectiveness allegations are raised for the first time on appeal and the trial court is excluded from the review process, here, *this Court has the benefit of the trial judge's evaluation of trial counsel's conduct in reviewing the claims, rendered close in time to the trial.*

*Id.,* at 854 (emphasis added). Here, though we have an evidentiary record, we do not have the benefit of the trial judge's evaluation of trial counsel's conduct which the Court in *Bomar* found to be critically important.[9] Whether we address ineffec-

---

9. In *Grant,* the Court explained that "the prej-    udicial effect of trial counsel's chosen course

tive assistance claims on direct appeal, *Commonwealth v. Hudson,* 820 A.2d 720, 726 (Pa.Super.2003), or on collateral review on appeal under the PCRA, *Commonwealth v. Kutnyak,* 781 A.2d 1259, 1261 (Pa.Super.2001), we determine whether the trial or PCRA court's findings are supported by the record and whether its order is free of legal error. Here, because the trial court did not resolve the claim, we, as an appellate court,[10] have nothing to review.

¶ 5 Accordingly, I join the majority in affirming Appellant's judgment of sentence but would not reach his ineffectiveness claim under *Grant.*

of action is determined more accurately after the trial and appellate courts have had the opportunity to review the alleged claims of error and if necessary, correct any trial court errors. It is only after this review that the full effect of counsel's conduct can be placed in the context of the case." *Id.,* at 66, 813 A.2d at 737. The trial court is clearly in the best position to evaluate any prejudicial impact occasioned by trial counsel's actions or omissions and must do so in the context of the conduct of the entire trial in order to determine if there is a reasonable probability that, but for counsel's actions or omissions, the result of the trial would have been different, the third prong of the ineffectiveness standard. When an appellate court attempts to assess constitutional prejudice in this context, we, of necessity, cannot have the same view, from a cold record, that the trial court has.

**10.** I recognize, of course, that in reaching its decision, the Court in *Bomar* explained that, given the existence of an "extensive record

below exploring why trial counsel proceeded in the manner that they did means that there is no danger of engaging in appellate fact-finding in the form of speculation concerning the strategy actually pursued by trial counsel" and that "[i]n this circumstance, *an appellate court* may review trial counsel's strategy from the 'horse's mouth,' as it were, and not engage in after-the-fact guesswork." *Id.,* at 854 (emphasis added). While this language might signal that the appellate court could review trial counsel's testimony concerning his or her strategy in the first instance, this language must be read in the context of the entire resolution of this issue and the importance that the Court placed on the existence of a trial court opinion and the benefit of the trial court's evaluation of trial counsel's conduct in the first instance as that is the court that observed first hand counsel's allegedly deficient performance. Accordingly, I do not view this language as granting this or any other appellate court license to make factual determinations in the first instance.